United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TINA BUSTILLOS,

    Plaintiff,

v.

BIMBO BAKERIES USA INC.,

    Defendant.

No. C 08-3553 SI

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On June 19, 2009, the Court held a hearing on defendant's motion for summary judgment. For the reasons set forth below, the Court DENIES the motion.

## BACKGROUND

Plaintiff Tina Bustillos worked for defendant Bimbo Bakeries USA, Inc. ("BBU") as a Route Sales Representative ("RSR") from April 2001 until December 7, 2007, when she was terminated. BBU bakes and distributes bread, cake, and snack food products under brand names including Oroweat®, Entenmann's®, Thomas'®, Boboli®, Bimbo®, and Tia Rosa®. As an RSR, plaintiff's job was to sell and deliver BBU products to customers' stores on her route.[1] For the majority of her employment, plaintiff was the only female RSR out of 32 RSRs in the South San Francisco and San Francisco depots.

The parties dispute much of what occurred during plaintiff's employment. However, it is undisputed that throughout her employment, plaintiff complained to her supervisors about a number of matters, including what she perceived to be ongoing harassment and discrimination by her male co-

---

[1] As discussed *infra*, the parties dispute whether sales was a primary duty of the RSR position.

workers and supervisors. The alleged harassment and discrimination included repeated vandalism of her personal vehicle (such as nails in her tires), repeated tampering with her work truck, and various acts by male RSRs to interfere with plaintiff's ability to do her job, such as male RSRs taking product off of racks next to plaintiff's truck, thus forcing her to search for product in more distant locations, and male RSRs taking merchandise from her truck.[2] Plaintiff also alleges that her male supervisors and co-workers made sexist comments about women not being able to perform the RSR job. Several times BBU investigated plaintiff's complaints and concluded that they were unfounded. Plaintiff filed several complaints with the DFEH and EEOC in 2002 and 2003, but did not file lawsuits at the time. On March 17, 2008, after she was terminated, plaintiff filed another charge of discrimination with the EEOC and DFEH, alleging that "throughout my employment, I was subjected to on-going harassment and disparate treatment by the management" based on sex, disability[3] and retaliation.

In 2006 and 2007, plaintiff accumulated five instances of written discipline over a 12 month period. On December 7, 2007, BBU terminated plaintiff on the basis of her accumulated discipline. Plaintiff alleges that her termination was discriminatory and retaliatory, and alleges numerous claims arising out of her employment, including claims for sex and disability discrimination, wage and hour violations, retaliation, and wrongful termination in violation of public policy.

**DISCUSSION**

Defendant moves for summary judgment on the following claims: (1) failure to provide meal and rest periods in violation of California law; (2) failure to provide meal and rest periods in violation of FLSA; (3) gender discrimination in violation of FEHA; (4) gender discrimination in violation of Title VII; (5) harassment on the basis of gender in violation of Title VII; (6) harassment on the basis of gender in violation of FEHA; (7) disability discrimination in violation of the ADA; (8) disability discrimination in violation of FEHA; (9) retaliation in violation of Title VII; (10) retaliation in violation

---

[2] These are just a few examples from the many alleged. BBU disputes plaintiff's allegations, and also objects to the evidence she has submitted in support of these allegations. The Court addresses defendants' evidentiary objections *infra*.

[3] Plaintiff had several injuries and medical issues during the time of her employment, including being diagnosed with possible carpal tunnel syndrome shortly before her termination.

2

of FEHA; (11) wrongful termination in violation of public policy for complaints of alleged wage and hour violations; and (12) retaliation in violation of FLSA.

## I.  Defendant's evidentiary objections

Defendant moves to strike much of plaintiff's evidence, and contends that without this evidence, plaintiff has failed to raise any factual disputes.[4] The evidence at issue includes, *inter alia*, plaintiff's declaration, declarations submitted by several of plaintiff's male RSR co-workers, and an expert declaration. Defendant objects that plaintiff's declaration should be stricken because it contradicts her deposition testimony. However, much (if not all) of the declaration testimony at issue is not inconsistent. For example, plaintiff states in her declaration that when Mr. Beltramo interviewed her, "he told me that women could not generally handle the job because they are not strong enough physically. I told him that I believed that I could do anything I put my mind to do." Bustillos Decl. ¶ 5. Defendant contends that this is inconsistent with her deposition testimony. However, her declaration and deposition testimony are consistent on this point. At her deposition, plaintiff testified:

> A.  Well, on my interview he said, "A lot of women can't handle this job. It's going to be very tough on you. Do you think you can do it?" And I told him I – I've – I've tried – whatever I put my mind to I try to accomplish. I think I can do anything that I try to accomplish. I think I can do anything that I really put my mind to. . . .

Bustillos depo. 375:7-12. Other examples cited by defendant are also not inconsistent. *Compare e.g.*, Bustillos Decl. ¶ 10 (stating that RSR Zion Aoun sexually harassed plaintiff by removing product from her truck and rubbing up against her arm or leg, and that plaintiff complained to Aaron Littleton April 2001 and "nothing was done") *with* Bustillos depo. at 187:10-22, 323:17-21, 402:18-22 (discussing "sexual harassment with Ziad rubbing against me with his arms," stating that after she complained in May 2002 she was moved). Some of the alleged inconsistencies are not actually inconsistent, but simply provide different details about the alleged discrimination and harassment. In addition, much of the information that defendant contends was "withheld" at the deposition is contained in plaintiff's journal,

---

[4] Defendant also contends that plaintiff's claims fail for other reasons, such as her inability to show she was adequately performing her job.

3

which was introduced as an exhibit at the time of her deposition.[5]

Defendant also objects on hearsay grounds to various sexist and profane comments allegedly made by plaintiff's supervisors and male RSRs. However, these comments are not offered for the truth of the matter asserted, but for the fact that they were made. Further, "[e]vidence of the employer's discriminatory attitude in general is relevant and admissible to prove [] discrimination." *Heyne v. Caruso*, 69 F.3d 1475, 1479-80 (9th Cir. 1995) (*citing United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 713-14 n.2 (1983))*; see also Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 333 (3d Cir.1995) ("We have held that a supervisor's statement about the employer's employment practices or managerial policy is relevant to show the corporate culture in which a company makes its employment decision, and may be used to build a circumstantial case of discrimination."). To the extent defendant asserts that these comments pre-date the statutory period, courts have held that time-barred discriminatory conduct is admissible to prove later discriminatory intent. *See*, *e.g.*, *Lyons v. England*, 307 F.3d 1092, 1111 n.12 (9th Cir. 2002) ("[A] single derogatory racial remark" made outside the limitations period by an employer or agent is admissible as "relevant evidence of the employer's present discriminatory intent."); *see also Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1031-32, 1038 (9th Cir. 2005) (discriminatory statements from 1994 relevant to proving discriminatory promotion decision five years later).

Some of defendant's evidentiary objections may be well-founded. However, the Court finds it unnecessary to address each separate evidentiary ground at this time because there is, at a minimum, sufficient admissible evidence in plaintiff's declaration, deposition testimony, and the declarations and deposition testimony of other BBU employees sufficient to raise factual disputes and defeat summary judgment. The Court also does not address the objections to Ms. Ciddio's expert report because the Court does not rely on that report to find that there are factual disputes surrounding plaintiff's disability claims. Defendant may renew its objections to specific evidence at the time of trial, and may renew its objections to Ms. Ciddio's testimony in a motion in limine.

---

[5] In its supplemental submission, defendant correctly notes that plaintiff's journal is not testimony. The Court makes no finding about the admissibility of the journal. However, the fact that the journal was provided to defendant at the time of the deposition undercuts defendant's assertion that plaintiff's summary judgment declaration contains new information that was previously withheld.

4

**II.     California meal and rest period claim**

Defendant contends that plaintiff's meal and rest period claims are preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501 *et seq.* The FAAAA broadly preempts state laws that impact the prices, routes, and services of motor private carriers. *See* 49 U.S.C. § 14501(c)(1); *Am. Trucking Ass'n., Inc. v. City of Los Angeles ("ATA")*, 559 F.3d 1046, 1053 (9th Cir. 2009). Defendant contends that BBU is a motor carrier covered by the FAAAA, and that meal and rest break laws affect BBU's prices, routes and services because, *inter alia*, the configuration of routes and customer services is directly impacted by the timing and duration under state law as to when employees must take the breaks. An employer seeking the exemption has the burden of proving entitlement. *See Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1468 (9th Cir. 1997) (discussing exemption under FLSA).

Plaintiff raises two arguments against preemption. First, plaintiff argues that BBU is not a "motor private carrier" covered by the FAAAA because plaintiff drove a vehicle weighing 10,000 pounds or less, which is not a "commercial motor vehicle." During the relevant time period, "motor private carrier" was defined as:

> (15) Motor private carrier.– The term "motor private carrier" means a person, other than a motor carrier, transporting property by commercial motor vehicle when–
>
> (A) the transportation is as provided in section 13501 of this title;
>
> (B) the person is the owner, lessee, or bailee of the property being transported; and
>
> (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(15) (2005).[6] Defendant argues that under the language of the FAAAA, a "motor private carrier" is defined by examining the "owner" of the property being transported – the employer – not the employee or driver. Thus, defendant argues, it is irrelevant that plaintiff herself drove a vehicle that was not a "commercial motor vehicle," because BBU as a whole transported property by commercial motor vehicle.

---

[6] The definition of "private motor carrier" was amended in 2008 to state "motor vehicle" instead of "commercial motor vehicle."

5

Second, plaintiff argues that even if the exemption applies, California's meal and rest period laws fall within the FAAAA statutory exception to preemption for safety regulations. The FAAAA states that the preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . ." 49 U.S.C. § 14501(c)(2)(A). The Ninth Circuit has instructed that to fall within the safety exception, "any regulation must be 'genuinely responsive to safety concerns.'" *ATA*, 559 F.3d at 1053 (quoting *City of Columbus v. Ours Garage & Wrecking Serv., Inc.*, 536 U.S. 424, 442 (2002)).

> This standard requires that we consider intent. We must ask if the regulator was acting out of safety concerns. That is, we must consider whether the purpose and intent was truly safety. But that does not mean that we are required to take the regulator at its word; we need to go further with the analysis. We must still decide whether the regulation is genuinely responsive to safety concerns.

*ATA*, 559 F.3d at 1053-54 (internal quotations and citations omitted). In *ATA*, the Ninth Circuit held that mandatory concession agreements for drayage trucking services at ports did not fall within the FAAAA safety exception, and thus were preempted, because, *inter alia*, the legislative history of the concession agreements showed that "some of the stated purposes of the Los Angeles Board . . . underscores an extensive attempt to reshape and control the economics of the drayage industry in one of the largest ports in the nation" and that "another significant purpose behind the Concession agreements was purely environmental." *Id.* at 1055.

Defendant asserts that California's meal and rest period laws are not safety related, and cites a finding by the Federal Motor Carrier Safety Administration stating that California's meal and rest break rules "are in no sense regulations 'on commercial motor vehicle safety'" but are rather "simply one part of California's comprehensive regulations governing wages, hours and working conditions." 73 Fed. Reg. 79,205, 2008 WL 5351180 (Dec. 24, 2008). However, those findings were made in the context of the FMCSA's decision to *reject* a petition filed by motor carriers for preemption of California's meal and rest period laws. *See id.* The FMCSA found that the petition did not satisfy the threshold requirement for preemption under 49 U.S.C. § 31141(c) because the provisions at issue are not "laws and regulations on commercial vehicle safety" but rather laws that apply generally to California employers. *Id.* Defendant does not provide any analysis of the FMCSA finding, and it is not obvious to the Court that the FMCSA's statement – which is focused on whether California's laws were targeted

6

to commercial vehicle safety as opposed to laws of broader applicability – necessarily precludes a finding that the meal and rest period laws were enacted out of safety concerns.

Plaintiff also does not address the safety issue in any depth. Plaintiff relies on the California Supreme Court's statement in *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1113 (2007), that "Indeed, health and safety considerations (rather than purely economic injuries) are what motivated the IWC to adopt mandatory meal and rest periods in the first place." While that statement is certainly relevant to the question presented by defendant's motion, it does not resolve the Court's inquiry. As *ATA* instructed, the Court must analyze "whether the purported safety justifications will withstand scrutiny. It is not enough to say that the provision might enhance efficiency, or reduce some kind of negative health effects. The narrow question, again, is whether the provision is intended to be, and is, genuinely responsive to motor vehicle safety." *ATA*, 559 F.3d at 1055. Neither party has discussed or provided any analysis of the legislative history of California's meal and rest period laws, or examined whether those laws are truly responsive to motor vehicle safety.

Accordingly, the Court DENIES defendant's motion for summary judgment on plaintiff's meal and rest period claim, without prejudice to defendant renewing the preemption argument in a motion in limine with more extensive briefing on the issues discussed above. With regard to defendant's alternative argument that, as a factual matter, defendant provided plaintiff with meal and rest periods, the Court finds that there are disputes of fact such that summary judgment is inappropriate.

## III.    FLSA overtime

Defendant contends that plaintiff's claim for overtime under FLSA fails because she was an exempt outside salesperson. The FLSA exempts from federal overtime provisions "any employee employed . . . in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). An outside salesperson is someone whose "primary duty" is sales and who is "customarily and regularly engaged away from the employer's place . . . of business in performing such primary duty." 29 C.F.R. § 541.500(a). Defendant contends that plaintiff's work was primarily in her customers' stores and her primary duty was to sell product, and thus that she is exempt.

The Court finds that there are disputed issues of fact regarding whether plaintiff's primary duty

7

was sales. Plaintiff has submitted evidence showing that the majority of her time was spent loading and delivering Bimbo's products to retail stores, and that sales and selling were not her primary duty. Bustillos Decl. ¶¶ 118-123. The Court also finds persuasive Judge Ware's decision in *Leonard et al. v. Bimbo Bakeries USA Inc.*, C 05-829 JW (N.D. Cal. Sept. 28, 2007), in which he found that there were a number of factual disputes regarding the job duties of RSRs. *See* Trowbridge Decl. Ex. K at 4-9.

### IV.     Sex discrimination and gender harassment

Defendant contends that plaintiff cannot make out two elements of a *prima facie* claim of gender discrimination: (1) that plaintiff was performing competently, and (2) a discriminatory motive. Defendant emphasizes that plaintiff had accumulated discipline warranting termination under the CBA and the Employee Manual, and defendant argues that there is no evidence that male RSRs were treated more favorably than she.

The Court finds that there are numerous disputes of fact sufficient to defeat summary judgment as to her timely claims of gender discrimination (e.g., specific adverse employment actions). Plaintiff has introduced evidence showing that she was a good employee and met her sales goals. She has also submitted evidence showing that male RSRs were not disciplined for at least some of the same conduct for which plaintiff was disciplined (and which led to her termination). For example, plaintiff has submitted evidence showing that male RSRs were not disciplined for leaving "off code" (stale) product in a customer's store, or for not "punching out." Plaintiff has also submitted evidence that her supervisors made numerous sexist comments over the course of her employment, thus raising a question as to motive.

Similarly, viewing the evidence in the light most favorable to plaintiff, as the Court is required to do on summary judgment, the Court concludes that plaintiff has raised a triable issue of fact on her hostile work environment claim. *See Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027 (9th Cir. 2005). Defendant argues that plaintiff has only identified a single instance within the statutory

1 period[7] when a co-worker used profanity that may or may not have been directed at plaintiff, and that
2 this instance cannot as a matter of law constitute sexual harassment. However, plaintiff has alleged a
3 pattern of harassment throughout the time she was employed at BBU. Plaintiff has submitted evidence
4 of, *inter alia*: male RSRs and male supervisors made sexist comments; male RSRs came into plaintiff's
5 work area and pulled product off of racks next to her truck, forcing her to search for product at more
6 distant locations and thus prolonging her loading; tampering with her truck's computer and lights so that
7 her truck battery would be dead; repeated vandalizing of her personal vehicle; male RSRs using the
8 women's bathroom (where plaintiff was the only female) and leaving the toilet filled with feces; male
9 RSRs were permitted to work off the clock to complete their work duties while plaintiff was disciplined
10 for the same; and plaintiff was required to put stickers on her products and mark off her products when
11 loading her truck, while male RSRs were not required to do the same. "Provided that an act contributing
12 to the claim occurs within the filing period, the entire time period of the hostile environment may be
13 considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*,
14 536 U.S. 101, 117 (2002); *see also Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823 (2001)
15 ("employer's persistent failure . . . to eliminate a hostile work environment . . . is a continuing violation
16 if the employer's unlawful actions are (1) sufficiently similar in kind-recognizing, as this case illustrates,
17 that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably
18 accommodate disability, may take a number of different forms; (2) have occurred with reasonable
19 frequency; (3) and have not acquired a degree of permanence.") (internal citation omitted). Under the
20 totality of the circumstances, plaintiff has raised triable issues of fact sufficient to withstand summary
21 judgment.

### V. Disability discrimination

Defendant moves for summary judgment on plaintiff's disability discrimination claims on the ground that plaintiff cannot show that she was a qualified person with a disability, that she has no evidence of pretext, that defendant accommodated plaintiff each time she was medically restricted, and,

---

[7] Plaintiff filed a complaint with the EEOC and DFEH on March 17, 2008. Bustillos Decl. Ex. A2.

9

1 relatedly, that defendant engaged in the interactive process with plaintiff.

2 The Court finds that there are disputed issues of fact such that summary judgment is
3 inappropriate.

**VI.  Retaliation**

Defendant contends that plaintiff cannot show temporal proximity between her complaints of gender discrimination, which began in 2002, and her termination five years later. Defendant also contends that plaintiff was terminated for a legitimate, nondiscriminatory reason, and that there is no evidence of pretext. Relatedly, defendant contends that plaintiff does not allege a continuous course of retaliatory treatment, but instead complains about a "series of disjointed events."

In her opposition, plaintiff focuses on events that occurred closer to her termination,[8] including her complaint two months prior to her termination about a co-worker (Atkinson) using profanity (which she perceived as directed at her and as gender discrimination), and her complaint about defendant removing a stop from her route. With regard to the latter, plaintiff notes that on December 7, 2007 at 8:15 am, before Mr. Beltramo had purportedly learned that plaintiff had incurred discipline sufficient to warrant termination, Mr. Beltramo sent an email to HR referencing a communication between Mr. Freschette and plaintiff earlier that morning about the removal of the stop. In the email, Mr. Beltramo wrote, "Then she asked if we were taking a stop from her if this was a gender thing . . ." In a second email to HR at 8:23 am, Mr. Beltramo wrote about the "tension" plaintiff was causing with her "constant threat of harassment accusations," and mentioned that this issue was raised when Ms. Martin interviewed Mr. Atkinson about his use of profanity. Later that day, plaintiff was terminated. Plaintiff also alleges that defendant retaliated against her by terminating her within a day after she disclosed her medical issues. Viewing this evidence in the light most favorable to plaintiff, a reasonable jury could conclude that defendant improperly retaliated against plaintiff.

---

[8] It is unclear from plaintiff's papers whether plaintiff is basing her retaliation claim on other alleged protected activity. If so, it may be that the protected activity is too attenuated from the termination to give rise to a retaliation claim. However, the Court need not resolve that question now and can address that question in connection with pretrial motions in limine if necessary.

1 **VII. Wrongful termination and FLSA retaliation**

2   For all of the reasons stated above, there are genuine issues of fact surrounding plaintiff's
3 termination, including whether she was terminated for complaining about wage and hour violations.

4
5                                **CONCLUSION**
6   For the foregoing reasons, the Court DENIES defendant's motion for summary judgment.
7 Docket No. 40.

8
9 **IT IS SO ORDERED.**

10
11 Dated: June 19, 2009
                                                     SUSAN ILLSTON
12                                                   United States District Judge